359 A.2d 48

WILLIAM P. MORINVILLE *vs.* LANA MORINVILLE *et al.*

JUNE 14, 1976.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

508

KELLEHER, J. In this negligence action the plaintiff has sued the driver and the owner of an automobile which he claims struck him, thereby inflicting serious bodily injury. The defendant driver is the plaintiff's former wife.[1] The defendant Larry Yeater, whose wife lived at one time in the Morinville home as a foster child, is the owner of the vehicle. A Superior Court jury returned a verdict in favor of the defendants. The trial justice denied the plaintiff's motion for a new trial, and the plaintiff is before us on an appeal, challenging the denial of the new trial motion and certain evidentiary rulings made by the trial justice.

This is not the first time that William and Lana have come to court to resolve their disputes. Earlier they were in the Family Court, where the wife was awarded an absolute divorce and custody of the couple's two young children. The final decree gave the husband certain visitation rights. However, sometime after its entry a dispute arose as to how, when, and where plaintiff could see the children. It appears that arrangements were worked out whereby on Sunday afternoons the children and their father would meet at the Dr. Patrick I. O'Rourke Children's Center in Providence and spend the afternoon together at this state-operated facility.

Early on Sunday afternoon, October 26, 1969, Mrs. Demers drove to the Children's Center and left the chil-

---

[1] At the trial, Lana Morinville, having apparently remarried, was addressed as Mrs. Demers. From time-to-time we shall refer to her by her present name and trust that at some point before final judgment the record will be amended to reflect this change.

dren with their father. She returned later in the day to pick them up, and what occurred during the pickup led to this litigation. The husband's testimonial version of what transpired was directly contradictory to his ex-wife's.

Upon her arrival at the Children's Center Mrs. Demers parked the Yeater vehicle next to several of the buildings located nearly 100 yards from the athletic field where the children and their father had been playing. The children ran to their mother and entered the back-seat portion of the car. According to the father, he approached the driver's side of the automobile with the children's coats and a few Halloween novelties in his hand. The father attempted to deliver his gifts to the children, but they apparently rejected his overtures.

The husband then testified that following a somewhat heated verbal exchange between him and his former spouse, she started the car, shifted into reverse, accelerated rapidly, and at the same time turned the wheels to the right. As the car moved backward, the left front fender and bumper swung to the left, striking plaintiff in the left knee with considerable force.

The plaintiff presented testimony indicating hospitalization and surgery, a substantial loss of income, continued pain and suffering, and a permanent impairment of his earning capacity, all of which he claims is attributable to his injured knee. In addition, Mr. Morinville testified that a friend and former business associate had witnessed the incident but refused to come to court because he did not wish to get involved. He conceded that no attempt was made to obtain the missing witness' deposition.[*]

Mrs. Demers, however, told a different tale. The plaintiff, she said, approached the car empty-handed and proceeded

---

[*]While this case was on appeal, we granted the plaintiff's motion to remand the papers to the Superior Court so that he could seek permission there to take his friend's deposition.

to lean against the front left fender of the vehicle. A conversation ensued in which his language became so heavily laced with profanities that she had to ask him to refrain from using this type of language in the presence of the children. Moreover, she also asked him to move so that they could leave the premises. Mrs. Demers insisted that as she put the car into reverse gear and started to move, plaintiff pounded the left front of the automobile with his fists and uttered a few expletives. He moved back from the moving car and within a matter of seconds the wife and her passengers left the Children's Center. She maintained that the car travelled backwards in a straight line, and at no time struck the plaintiff. She also denied that his business associate was present at the time of this incident. Rolande Yeater, the defendant-owner's wife, was a front-seat passenger and witnessed the whole sequence of events. She appeared as a witness and corroborated the testimony given by Mrs. Demers.

The plaintiff contends that the trial justice merely rubber-stamped the jury's verdict because he never discussed the evidence or gave reasons why he thought the jury's verdict should remain undisturbed. It is true that in this jurisdiction a trial justice, in considering a motion for a new trial, is obligated to make an independent appraisal of the testimony, during which he may pick and choose whom and what he will believe as he weighs the evidence and assesses credibility. *Sweet* v. *Hemingway Transp., Inc.,* 114 R. I. 348, 352, 333 A.2d 411, 414 (1975); *Gordon v. Campanella Corp.,* 112 R. I. 417, 420, 311 A.2d 844, 847 (1973); *Ruggieri* v. *Beauregard,* 110 R. I. 197, 199, 291 A.2d 413, 414 (1972); *Barbato* v. *Epstein,* 97 R. I. 191, 193, 196 A.2d 836, 837 (1964). In ruling on a motion for new trial, the trial justice need not make an exhaustive analysis of the evidence or state all his conclusions as to the weight of the evidence or the witnesses' credibility, but he should at least

refer sufficiently to what motivates him to rule as he does so that the reviewing court can determine whether he has overlooked or misconceived material evidence on a controlling issue or is otherwise clearly wrong. *Fontaine* v. *Devonis,* 114 R. I. 541, 543-44, 336 A.2d 847, 854 (1975); *Wood* v. *Paolino,* 112 R. I. 753, 755-56, 315 A.2d 744, 745 (1974). A pro forma approval of a jury verdict cannot be given the weight which we usually accord to a trial justice's decision on a new trial. *Marcinko* v. *D'Antuono,* 104 R. I. 172, 187, 243 A.2d 104, 112 (1968).

We have examined the decision given by the trial justice when he denied plaintiff's new trial motion. It is somewhat lacking in precision and clarity, and out of an abundance of concern for plaintiff's rights we will assume that the trial justice has failed to make the requisite independent evaluation of the evidence. Consequently, we will continue our consideration of this portion of his appeal with this assumption in mind.

The fact that a trial justice fails to do what is expected of him when he decides a new trial motion does not automatically give an appellant a new trial. In such circumstances we must examine the record for ourselves and grant a new trial if the evidence as we view it "strongly preponderates" against the jury's verdict. *Marcinko* v. *D'Antuono, supra* at 187, 243 A.2d at 112. Since we cannot see or hear the witnesses, we have fashioned the rule that when a trial justice has erred in his consideration of a new trial, either by way of commission or omission, we will examine the record to determine if it contains any competent evidence which, if believed, would support the jury's verdict. *Harter* v. *Home Indem.* Co., 111 R. I. 340, 352, 302 A.2d 793, 800 (1973); *Landes* v. *Faella,* 106 R. I. 23, 28, 255 A.2d 724, 727 (1969) *citing State* v. *Contreras,* 105 R. I. 523, 253 A.2d 612 (1969). If there is, the verdict does not strongly preponderate against the evidence, and the jury's verdict

will not be disturbed. *DeSimone* v. *Manzi,* 114 R. I. 30, 33, 327 A.2d 840, 842 (1974); *Molleur* v. *City Dairy, Inc.,* 110 R. I. 58, 64, 290 A.2d 214, 218 (1972); *Gilbert* v. *Girard,* 109 R. I. 68, 74, 279 A.2d 919, 923 (1971).

When the case at bar came on for oral argument, we suggested to the parties that it might be beneficial to the bench, the bar, and the litigants if a comparison was made between our appellate rule and the rule invoked by the federal appellate courts when an appellant contends that the trial judge, in considering a motion for new trial, fails to properly evaluate the evidence. We acknowledge with gratitude the assistance given us by both counsel.

The law regarding the reviewability of a federal trial court's order granting or denying a motion for new trial because the verdict is against the weight of the evidence appears to have changed. 11 Wright & Miller, *Federal Practice and Procedure: Civil* §2819 at 121 (1973). Not so many years ago the Supreme Court made the unqualified statement that a trial court's denial of a new trial motion claiming that the verdict was against the weight of the evidence "would not be subject to review." *United States* v. *Socony-Vacuum Oil Co.,* 310 U. S. 150, 248, 60 S.Ct. 811, 856, 84 L.Ed. 1129, 1181 (1940). The Court reasoned that if an error had been made, it involved a question of fact which, in turn, was a matter directed to the trial judge's discretion. Thirteen years later Judge Learned Hand reconfirmed this position by characterizing as "too well established to justify discussion" the rule that "* * * erroneous orders granting or denying motions to set aside verdicts on the ground that they are against the weight of the evidence" are not reviewable. *Portman* v. *American Home Products Corp.,* 201 F.2d 847 (2d Cir. 1953).

With the passage of time came a change in judicial thought relative to reviewability of new trial motions. Today the denial or granting of new trial motions in general,

as well as those premised on the assumption that the jury's verdict is against the weight of the evidence, are reviewable and can be reversed upon a showing that the trial justice's decision constituted an "abuse of discretion."[3] When used in the context of new trial motions, the phrase "abuse of discretion" has been described as an unfortunate choice of words. *Massey* v. *Gulf Oil Corp.*, 508 F.2d 92, 94 n. 2 (5th Cir. 1975). Professor Moore in his treatise asserts that a finding of an abuse of discretion is merely another way of saying that the trial justice "clearly erred."[4] 6A Moore, *Federal Practice* ¶59.08[6] at 59-175 (1974).

The amount of evidence necessary to support a jury's verdict and thereby prevent a new trial has been addressed by several federal courts. In a thoroughly informative opinion, Judge Wisdom of the Fifth Circuit stated that the denial of a new trial motion which alleged that the verdict was against the weight of the evidence can only be reversed if there is an "absolute absence of evidence to support the jury's verdict."[5] *Urti* v. *Transport Commercial*

---

[3] *See Rodrigues* v. *Ripley Industries, Inc.,* 507 F.2d 782, 786 (1st Cir. 1974); *Sotell* v. *Maritime Overseas, Inc.,* 474 F.2d 794, 796 (2d Cir. 1973); *Sokol* v. *Gussack,* 367 F.2d 576, 577 (3d Cir. 1966); *Norfolk Southern Ry. v. Davis Frozen Foods, Inc.,* 195 F.2d 662, 664 (4th Cir. 1952); *National Car Rental System, Inc.* v. *Better Monkey Grip Co.,* 511 F.2d 724, 730-31 (5th Cir. 1975); *Nanda* v. *Ford Motor Co.,* 509 F.2d 213, 221 n.9 (7th Cir. 1974); *Sanden* v. *Mayo Clinic,* 495 F.2d 221, 226 (8th Cir. 1974); *Harris* v. *Quinones,* 507 F.2d 533, 535 (10th Cir. 1974).

[4] The clearly wrong standard appears to have been adopted in Hawaii. *Petersen* v. *City & County,* 53 Hawaii 440, 496 P.2d 4 (1972).

[5] In *Urti* Judge Wisdom pointed out that the term "sufficiency of the evidence" has one meaning when appellate review is sought of the denial of either a motion for a directed verdict or a motion notwithstanding the verdict and another connotation when the appellate court is reviewing a trial justice's disposition of a new trial motion in which the litigant questions the probative force of the evidence adduced at trial. Judge Wisdom perspicaciously noted this distinction in the following comment:

"On appeal, when we review the denial of a motion for a new trial, we are not reviewing 'sufficiency' in its *technical sense*; that is, we are

*Corp.,* 479 F.2d 766, 769 (5th Cir. 1973). Moreover, the same circuit, in an earlier decision, stated that the standard to be applied by an appellate court to determine whether there is sufficient evidence to support the jury's verdict is "whether there is competent evidence in the record to support it." *McBrayer* v. *Teckla, Inc.,* 496 F.2d 122, 124 (5th Cir. 1974). Competent evidence, according to the court, was the existence of "a reasonable [evidentiary] basis in the record for the jury's conclusion." *Id.* at 125. Similarly, the Second Circuit, in *Collins* v. *Penn Central Transp. Co.,* 497 F.2d 1296, 1297 (2d Cir. 1974), would not set aside a verdict for lack of sufficient evidence unless the record showed a "* * * complete absence of probative facts to support the conclusion reached by the jury." Finally, the Tenth Circuit has held that in order for the evidence to insufficiently support the verdict, it must lack any "basis in fact" and be susceptible of only one reasonable inference. *Champion Home Builders* v. *Shumate,* 388 F.2d 806, 808 (10th Cir. 1967), *quoting United States* v. *Fenix & Scisson, Inc.,* 360 F.2d 260, 262 (10th Cir. 1966).

---

not reviewing the question of whether it was erroneous to submit the case to the jury. Rather, we are reviewing whether the district judge has abused his judicial discretion in denying a new trial or whether as a matter of law the denial of a new trial was erroneous because there was an *'absolute absence of evidence to support the jury's verdict.'* " (Emphasis added.)

*Urti* v. *Transport Commercial Corp.,* 479 F.2d 766, 769 (5th Cir. 1973). Accordingly, the perspective of the appellate court is limited to finding *any* evidence to support the jury's verdict. The Superior Court Rules of Civil Procedure make no provision for a N.O.V. judgment. We have observed that such an omission is cured by the provisions of Super. R. Civ. P. 50(b), which permits a trial justice to reserve decision on the motion for a directed verdict which is made at the close of all the evidence. Once the jury has returned its verdict or has reported a disagreement, the trial justice then can rule on the motion. *Padula* v. *J. J. Deb-Cin Homes, Inc.,* 111 R. I. 29, 33, 298 A.2d 529, 532 (1973); *Russo* v. *Odell,* 105 R. I. 349, 356, 252 A.2d 135, 139 (1969).

516

Comparing *Contreras* and its progeny with the opinions of our colleagues in the federal appellate judiciary, we are convinced that the standards and objectives guiding appellate review of new trial motions alleging insufficient evidence are rhetorically different but in substance and purpose identical. The common theme in all opinions is that within this narrow scope of review an appellate court should disturb the jury's verdict only in unusual circumstances.

Since the *Contreras* rule was first enunciated, it has been invoked on many occasions. There have been times when, applying the "strongly preponderates" yardstick, we have said that we will search the record to examine the competent, credible evidence and sustain the jury's verdict if "some"[6] or "any"[7] such evidence supported the verdict. Admittedly, there is a difference at first blush between the adjectives "some" or "any." But, when those terms are used in the context of the "strongly preponderates" yardstick, the difference is semantical rather than substantial, having in mind the well-settled principle that factual disputes are to be resolved by the jury, not by an appellate court whose examination is limited to a review of the cold record.

However, in order to avoid confusion regarding the standard this court will employ to review a trial justice's denial of a new trial motion, we will restate the appellate rule. The jury's verdict will be sustained if *as we examine the evidence in the light most favorable to the prevailing party, there is any competent evidence*[8] *which supports the verdict.* Applying this standard to the record presently before us, we need only refer to the testimony given by Mrs. Demers and her front-seat passenger from which the jury

---

[6] *Gilbert* v. *Girard,* 109 R. I. 68, 74, 279 A.2d 919, 923 (1971).

[7] *Landes* v. *Faella,* 106 R. I. 23, 28, 255 A.2d 724, 727 (1969).

[8] The term "competent evidence" is used to describe evidence that tends to establish a fact in issue.

could quite properly find that plaintiff's knee and the front portion of the Yeater car never came in contact with each other. Consequently, we affirm the trial justice's denial of the motion for a new trial. We now turn to the evidentiary facet of this appeal.

When asked by defendants in their interrogatories to detail any automobile accidents in which he was involved, including those where he might have sustained personal injuries within the 5-year period preceding the filing of the request for interrogatories, plaintiff in his sworn reply given on July 31, 1970, listed only a December 1965 whiplash incident. During cross-examination defendants, over plaintiff's objection, were permitted to show the jury that Morinville had been injured in four other automotive mishaps which occurred in June 1969, October 1969, January 1970, and April 1970, respectively. The October 1969 episode occurred just 5 days after the Children's Center confrontation but did not involve any personal injury. The three other incidents, however, did involve personal injury claims. The April 1970 claim involved injuries to plaintiff's knee.

While there is some question as to whether a timely objection was filed to the introduction of the June 1969 and April 1970 incidents, we shall assume that plaintiff's objection to the introduction, from a standpoint of timeliness, was well taken.

The plaintiff's credibility was at stake throughout the trial. During direct examination he spoke of the Children's Center collision and the resulting injuries to his knees, but he was completely silent as to the April 1970 episode. Once cross-examination began, the defendants had a right to test the plaintiff's credibility by inquiring about the four unreported incidents. The plaintiff by his reply had made a sworn representation to the court, and the variance between his representation and the actual happening of the four incidents was a proper matter for cross-examination. Because

the basic purpose of cross-examination is the impeachment of the witness, it follows that there can be no fixed limit as to the sound discretion of the trial justice. *State* v. *Crescenzo,* 114 R. I. 242, 332 A.2d 421 (1975). We see no abuse of discretion. The evidence was relevant, and the plaintiff has failed to persuade us that its prejudicial effect so outweighed its relevancy that his constitutional right to a fair trial was violated. *See State v. Infantolino,* 116 R. I. 303, 355 A.2d 722 (1976).

The plaintiff's appeal is denied and dismissed.

*Joseph E. Marran, Jr.,* for plaintiff.

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh,* for defendants.