**Thomas J. GALLO**

v.

**William J. ARNOLD.**

**No. 81–301–Appeal.**

Supreme Court of Rhode Island.

June 1, 1984.

---

Everett A. Petronio, Thomas M. Petronio (Everett A. Petronio, Inc.), Johnston, for plaintiff.

John B. Reilly (O'Neill & Reilly), Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This is an action for assault and battery wherein the plaintiff, Thomas J. Gallo (Gallo), sought to recover for personal injuries and consequential damages arising out of an alleged beating by the defendant, William J. Arnold (Arnold), following a collision between their respective automobiles on July 4, 1977. Arnold filed a counterclaim alleging that Gallo had committed assault and battery upon him. Following a jury trial,[1] a verdict was returned in favor of Arnold in respect both to Gallo's complaint and his own counterclaim. The jury found nominal damages of one dollar in favor of Arnold. Thereafter, the trial justice granted Gallo's motion for new trial. We affirm. The facts insofar as pertinent to this appeal are as follows.

Gallo testified that on July 4, 1977, at about 4 a.m., he was traveling south on Route 1 in South Kingstown. He closed his eyes and the trial justice found that he might have momentarily fallen asleep. After a moment he opened his eyes and noted a car slowing down in front of him. He slammed on his brakes but was unable to stop before slight contact was made. He noted no damage but pulled to the side of the road "to see if everything was okay."

After he had stopped in the breakdown lane, Gallo reported, a man from the other car (later determined to be Arnold) came charging at Gallo's car. The man reached in and slammed Gallo over the head with a nightstick; blood spattered "all over [the]

---

1. Initially Vincent T. Izzo was joined as a defendant in his capacity as acting treasurer of the city of Providence. This defendant was joined because Arnold had been employed by the city of Providence as a park security officer at Roger Williams Park from October 1975 to July 1977. A verdict was directed in favor of defendant Izzo. No appeal was taken from this action. Therefore, Izzo is no longer a party to this action.

car." The man then dragged Gallo out of the car, threw him on the ground, and proceeded to kick him in the side, yelling and screaming all the while for Gallo to fight back.

Arnold's account of this altercation was markedly different. He testified that Gallo had been harassing him on the highway by alternatively pulling up behind him, slowing down, coming close to the rear end of Arnold's car, and then pulling ahead and slowing down. Arnold said that Gallo had done this over a considerable distance and that he increased his speed to get away from Gallo and lost sight of him for about two miles prior to the moment of collision. However, the Gallo car again caught up with the Arnold car and struck its rear end. After the impact, Arnold stated, he pulled over to the side of the road and noted that Gallo's vehicle was also pulling over. At that point, he said, Gallo emerged from his automobile with a beer bottle in his hand, screamed at him, and offered to strike him with the bottle. Thereupon, Arnold stated, he struck Gallo a couple of times, once with his nightstick. At that point, according to Arnold, Gallo grabbed Arnold about the waist; thereupon Arnold made a movement with his foot in an attempt to shake Gallo loose.

Gallo's testimony was corroborated by that of two South Kingstown police officers who came upon the scene. Officer Craig Stedman saw Arnold "kicking something." As he approached more closely, he realized that the object was a person. As Arnold was kicking the person, the officer heard him say "Stand up and fight." At this point Officer Stedman took Arnold into custody and led him toward the police car. Arnold stated, "It's all right, I'm a Providence police officer and he hit my car." Officer Stedman then inspected the person on the ground. This person was lying face down, trying to lift himself up with his hands. The person was covered with blood from his head to almost below his knees. The person whom the officer later determined to be Gallo had about a four-or-five-inch gash on the top of his head. There were other injuries on his face: his eyes were swollen shut, and his face was distorted. Officer Stedman examined Gallo's automobile and found blood and what appeared to be a broken beer bottle in the interior of the car on the driver's side. Officer Joseph Gaeber, who was also on the scene, observed that Gallo was covered with blood from the top of his head to his waist. Officer Gaeber also noted that Gallo's eyes were completely closed and that he had serious lacerations on the back of his skull. Officer Gaeber then searched the area in the vicinity of the point where Gallo had first been observed lying prone, and discovered a nightstick about fifteen feet south of that position. The nightstick was covered with fresh blood and hair.

On the motion for new trial, the trial justice reviewed the evidence given by the various witnesses and stated in substance that he did not believe Arnold's testimony. He stated that he did not believe that the verdict did "justice between these parties." He therefore granted a new trial on both the complaint and the counterclaim. In his observations concerning Arnold's testimony, he observed that his story was "unbelievable" and contained inconsistencies.

■ On appeal, Arnold argues that the trial justice misconceived relevant testimony on a crucial issue. For example, Arnold points out that the trial justice quoted one of the South Kingstown officers as saying that Arnold had been kicking Gallo in the face. Actually, it was Gallo who testified that he had been kicked in the face. Officer Stedman observed Gallo being kicked generally and did not refer to the specific portion of the anatomy with which the kick connected. We are of the opinion that such an observation in the course of an oral decision was solely peripheral and did not constitute a misconception or overlooking of relevant evidence on a crucial issue. An examination of the trial justice's decision indicates that he had a very good grasp of the evidence in the case, and that he considered all of the significant evidence, par-

ticularly that evidence which compelled a specific ruling. *See Dixon v. Royal Cab, Inc.,* 121 R.I. 110, 120, 396 A.2d 930, 935 (1979); *Morinville v. Morinville,* 116 R.I. 507, 511–12, 359 A.2d 48, 51 (1976). There is no question that he exercised his independent judgment and passed upon the credibility of the witnesses. *Puc v. Leaseway of New England,* 121 R.I. 149, 152, 396 A.2d 940, 941–42 (1979); *Barbato v. Epstein,* 97 R.I. 191, 193–94, 196 A.2d 836, 837 (1964).

Since the trial justice performed his function in accordance with the foregoing standards, his decision will not be disturbed on appeal unless he has overlooked or misconceived relevant evidence on a controlling issue or is otherwise clearly wrong. *Puc v. Leaseway of New England,* 121 R.I. at 152, 396 A.2d at 942; *Morinville v. Morinville,* 116 R.I. at 511–12, 359 A.2d at 51; *Fontaine v. DeVonis,* 114 R.I. 541, 543–44, 336 A.2d 847, 854 (1975); *Wood v. Paolino,* 112 R.I. 753, 755–56, 315 A.2d 744, 745 (1974).

█ An examination of the record in this case indicates that the vast preponderance of the evidence, including the testimony of two impartial witnesses, overwhelmingly supports the decision of the trial justice. Having found Arnold's testimony incredible and unworthy of belief, the trial justice was required to set aside a verdict that failed to respond truly to the merits of the controversy, that failed to administer substantial justice between the parties, and that was against the fair preponderance of the evidence. *Barbato v. Epstein,* 97 R.I. at 194, 196 A.2d at 837. Not only was the trial justice not clearly wrong, but his determination was virtually compelled by the evidence.

For the reasons stated, the defendant's appeal is denied and dismissed, and the case is remanded to the Superior Court for a new trial in accordance with the determination of the trial justice.