John J. DiBIASIO

v.

BROWN & SHARPE
MANUFACTURING
CO. et al.

No. 85–129–Appeal.

Supreme Court of Rhode Island.

May 11, 1987.

Nettie C. Vogel, Gunning, LaFazia & Gnys, Inc., Providence, for plaintiff.

Leo J. Dailey, Nolan & Dailey, Coventry, Michael G. Sarli, Gidley, Lovegreen & Sarli, Providence, for defendants.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on appeal by the defendants from denial of their motions for directed verdicts and motions for new trial. We affirm in part and reverse in part.

The action was based on allegations of defamation and tortious interference with a. contractual relationship. The amended complaint alleged that Charles C. Baldelli, Brown & Sharpe Manufacturing Company, and Andrew T. Mignanelli had made defamatory statements about the plaintiff John J. DiBiasio (plaintiff), that plaintiff had been wrongfully discharged by Brown & Sharpe, and that Mignanelli had tortiously inter-fered with plaintiff's contractual relation-ship with Brown & Sharpe.

The evidence presented established that Baldelli worked in the labor relations department of Brown & Sharpe. The plaintiff filed a job application with Brown & Sharpe in which he indicated he had been laid off by a previous employer, Andy's Texaco, for lack of work. On receiving an application for employment, as was its practice, Brown & Sharpe mailed a reference card to Andy's Texaco. The reply indicated that plaintiff was "untrustworthy and unreliable" and "not to be trusted to handle money or material." By the time the card was returned, plaintiff had already begun working at Brown & Sharpe as a probationary employee.

Baldelli instructed a clerk in his department to call the owner of Andy's Texaco and verify the information on the returned reference card. That clerk later advised Baldelli that Mignanelli, the proprietor, had confirmed the information and added that money had been stolen by plaintiff. Baldelli then reviewed the information with a coworker, and a decision was made to terminate plaintiff because he had falsified his application for employment.

A meeting was set up between plaintiff; Baldelli; plaintiff's supervisor, William Sharpe; and Joseph Savage, another supervisor, who did not work with plaintiff. The plaintiff was told he was being fired because he had falsified his application. Baldelli passed the reference card to Sharpe and Savage. He said that there was unfavorable information on the card of a kind plaintiff would not like to hear, but plaintiff said he did want to hear it and Baldelli read him the comments. The plaintiff did not respond.

When this meeting occurred, Baldelli had no serious doubts about the information received from the prior employer. At the conclusion of the meeting, Sharpe was directed to follow plaintiff to his locker and to accompany him to the gate, where he should retrieve plaintiff's employment badge.

Testimony at trial indicated that Browne & Sharpe's routine procedure requires that an employee's supervisor and department manager be present at a disciplinary meeting with an employee. Baldelli suggested that Savage was in attendance at the meeting because plaintiff's department manager must have been busy.

At trial, plaintiff denied the accusation that he was fired by Mignanelli for stealing money and insisted he had been laid off because business had slowed down during the winter months. His testimony corroborated Baldelli's description of his application to and his brief employment with Brown & Sharpe and his termination. He said that after he left Brown & Sharpe, the State Department of Employment Security (department) denied him unemployment-compensation benefits for the reasons for which he had been terminated. However, after investigation of plaintiff's termination from Andy's Texaco, the department reversed itself and awarded him unemployment benefits.

In his testimony Mignanelli admitted to his conversation with the clerk from Brown & Sharpe who had called to verify the information. He testified that when he received the card, it remained on his desk for "a week to ten days." Only after he got a call from Brown & Sharpe did he fill it out and return it. At first he said he did not recall putting any derogatory information on the card but later acknowledged that he had written on the card when it was shown to him. He also acknowledged that during a deposition he denied any knowledge that plaintiff had stolen money from him and at that time stated that plaintiff had been laid off for lack of work.

All defendants moved for directed verdicts at the close of plaintiff's case and at the close of all the evidence. These motions were denied.

The jury found for defendants Brown & Sharpe and Baldelli on the wrongful-discharge count. It found for plaintiff on the defamation count, awarding both compensatory and punitive damages against Brown & Sharpe and Mignanelli and punitive damages against Baldelli. The jury also awarded plaintiff both compensatory and punitive damages against Mignanelli for tortious interference with the contract. New-trial motions filed by defendants on all counts were denied.

The first issue we shall address concerns the question of conditional privilege as it might apply to Baldelli's statements made in front of Sharpe and Savage during the meeting in which plaintiff was terminated. Brown & Sharpe's and Baldelli's activities, interests, and status in these proceedings are congruent; therefore, our resolution of this issue applies to both.

Whether a communication "by an employer to his employees concerning a fellow employee's misconduct is qualifiedly privileged will turn on the particular fact situation of each case. The determination of whether on those facts the privilege exists is exclusively legal and is for the court, and not for the jury." *Ponticelli v. Mine Safety Appliance Co.*, 104 R.I. 549, 555, 247 A.2d 303, 307 (1968); *see also* Prosser & Keeton, *The Law of Torts*, § 115 at 835 (5th ed. 1984). In *Ponticelli* this court stated that the proper test is "whether in order to protect a common interest an employer either correctly or reasonably believes that a plaintiff's co-workers are entitled to be advised of the nature of his misconduct." 104 R.I. at 555, 247 A.2d at 307 (citing 3 Restatement, *Torts* § 596).

It seems clear that in this instance Brown & Sharpe had a strong interest in having supervisory personnel present at a meeting in which an employee was to be terminated. Supervisors have an interest in knowing that employees under their supervision are being terminated for legitimate reasons. Likewise, management has an interest in keeping its supervisors informed so that they can assist in maintaining good company morale. Communications between a personnel administrator and an employee's immediate supervisor about the reasons for termination further those interests and therefore fall within the scope of the qualified privilege. Furthermore, the presence of a department manager, or a designee in his absence, does not appear to be an unreasonable practice.

Consequently, we find that the trial justice was in error when he found that Baldelli's statements about plaintiff's falsification of his application were not qualifiedly privileged.

This situation is no different in principle from that in *Swanson v. Speidel Corp.*, 110 R.I. 335, 293 A.2d 307 (1972). There the plaintiff learned that his prior employer, through its supervisors, had placed termination notices in his personnel records that were very unfavorable and actually defamatory. This information was read to subsequent and prospective employers in response to inquiries addressed to Speidel as a prior employer.

This court held that *Ponticelli* was dispositive, and the trial justice was warranted in finding these communications to be qualifiedly privileged. *Swanson*, 110 R.I. at 339, 293 A.2d at 309; *cf. Dillard Department Stores, Inc. v. Felton*, 276 Ark. 304, 308, 634 S.W.2d 135, 137 (1982) (statements made at meeting in which the plaintiff was accused of stealing by a warehouse supervisor in presence of the plaintiff's immediate supervisor were qualifiedly privileged).

We must next consider whether Baldelli and Brown & Sharpe exceeded the privilege. In *Ponticelli* this court held that "[t]o support his burden [the plaintiff] must show that the primary motivating force for the communication was the publisher's ill will or spite toward him." 104 R.I. at 556, 247 A.2d at 308; *see also Belliveau v. Rerick*, 504 A.2d 1360, 1363 (R.I. 1986) (qualified privilege overcome only by evidence of common-law malice).

There is no evidence in the record that could support the argument that anyone at Brown & Sharpe harbored ill will or spite toward plaintiff. The only reasonable conclusion that can be drawn from the evidence is that upon receiving plaintiff's application for employment, Brown & Sharpe checked with the prior employer and received a negative report. After verifying this negative report with the prior employer, Brown & Sharpe terminated the employee in accordance with standard company procedures. The plaintiff argues that Brown & Sharpe's refusal to reconsider him for employment after Mignanelli had withdrawn his accusations is evidence of malice. We do not agree. Brown & Sharpe acted on an unequivocal report as was its right to do. We conclude, therefore, that Brown & Sharpe and Baldelli were entitled to directed verdicts at the close of plaintiff's case.

We next consider whether Mignanelli was entitled to a directed verdict or a new trial on the defamation count. The trial justice correctly ruled that the communication between Mignanelli and Brown & Sharpe was conditionally privileged. Therefore, plaintiff had the burden of establishing that the defamatory statements were the product of ill will or spite.

The record contains evidence from which the jury could conclude that Mignanelli was motivated by malice. The evidence relating to plaintiff's discharge from Andy's Texaco came from two witnesses, plaintiff and Mignanelli. Mignanelli recited to the jury the circumstances that led him to believe plaintiff had stolen money from him. But he admitted also that during a deposition he denied any knowledge that plaintiff had stolen money from him and that he stated plaintiff was laid off because of lack of work. In view of this inconsistent, in fact contradictory, testimony, the jury could have concluded that Mignanelli was motivated by malice in his communications with Brown & Sharpe. The trial justice therefore correctly denied Mignanelli's motion for a directed verdict.

We also believe that the trial justice correctly denied the motion for a new trial. He properly reviewed the evidence and was more impressed by plaintiff's apparent candor than by Mignanelli's credibility. The trial justice noted that Mignanelli's testimony contained many inconsistencies. When ruling on a motion for a new trial, the trial justice is not required to make an exhaustive analysis of the evidence or state all the reasons and conditions by which to determine credibility and evaluate the weight of the evidence. *Morinville v. Morinville*, 116 R.I. 507, 511–12, 359 A.2d 48,

(1976). It is sufficient that the trial justice refers to the motivation for the decision. The trial justice in this instance performed his duty adequately.

The last issue involves the denial of Mignanelli's motion for a directed verdict on plaintiff's claim of tortious interference with a contractual relationship. On this count, "[r]ecovery can be had by showing (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his intentional interference; and (4) damages resulting therefrom." *Smith Development Corp. v. Bilow Enterprises, Inc.*, 112 R.I. 203, 211, 308 A.2d 477, 482 (1973). Concrete knowledge by the wrongdoer of the contractual relationship is not required. Knowledge of facts that would lead a reasonable person to believe that such a contractual relationship exists may be sufficient. Prosser & Keeton, *The Law of Torts* § 129 at 982.

The facts known to Mignanelli at the time of his statements would have led a reasonable person to believe that there was an employer-employee relationship between the plaintiff and Brown & Sharpe. He testified that the reference card had remained on his desk for "a week to ten days" and that he responded only after he received a call from Brown & Sharpe asking that he fill out the card and return it. That length of time and the followup call are factors that reasonably should have alerted Mignanelli to the fact that the plaintiff had begun to work at Brown & Sharpe. The jury verdict therefore must stand.

For these reasons the appeals of Baldelli and Brown & Sharpe are sustained and the judgments against them reversed. The appeal of Mignanelli is denied; that judgment is affirmed, and the papers of the case are remanded to the Superior Court.

WEISBERGER, J., did not participate.