[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This action is before the court sitting without a jury and a decision is here rendered in accordance with R.C.P. 52. The case was heard before this court on June 1-2, 1994. The plaintiff seeks damages for breach of contract. The defendant counterclaims for damages resulting from breach of contract and tortious interference with contract. Jurisdiction in this court is pursuant to G.L. 1956 (1985 Reenactment) § 8-2-14 (Supp. 1993).
Facts
The evidence adduced at trial established the following facts. Plaintiff, R.J. Wheeler Company, Inc. ("R.J. Wheeler"), is a Rhode Island corporation duly incorporated under Rhode Island law. The defendant, F. Petty Sons, Inc. ("F. Petty Sons") was also a duly incorporated Rhode Island corporation at the time this cause of action accrued. The subject dispute arises out of a contract for the erection of a 32,000 square foot pre-engineered steel building in the Town of Lincoln for the Vistawall Company ("Vistawall").[1]
In the Spring of 1986, R.J. Wheeler negotiated with the Vistawall Company to build the pre-engineered structure to serve as a warehouse on the Vistawall site. R.J. Wheeler, as general contractor, subcontracted the erection of the structure to F. Petty Sons. The parties entered into the subcontracting agreement on April 24, 1986. (Exhibit 2). The agreement provided for a contract price of $59,300. Additionally, the agreement provides for the incorporation of the terms of the general contract between R.J. Wheeler and Vistawall ("general contract"), in particular, the requirement that change orders for extras be in writing. The evidence indicates that the general contract was not, in fact, entered into by R.J. Wheeler and Vistawall until August 13, 1986. (Exhibit 13).
F. Petty Sons was scheduled to begin work on the job site on May 12, 1986. The daily job reports compiled by Thomas Calcagne, the project foreman and R.J. Wheeler employee, indicate that the site was not ready for erection on that date. (Exhibit 3). Frank Petty, the President of F. Petty Sons, testified that the company incurred expenses due to that delay. Mr. Petty testified that additional expenses were incurred due to defects in the parts of the pre-engineered structure.
On June 4, 1986, F. Petty Sons billed R.J. Wheeler for $26,415. (Exhibit 9). The invoice indicates that $22,000 was due for construction of the red iron, the outer shell of the building. The remaining $4415 was due to extra expenses incurred as a result of the delay at the work site and defects in the parts. R.J. Wheeler tendered payment for $22,000.
Work continued on the project through June and July. Joseph Tassone, Vice President of R.J. Wheeler, testified that the company was not satisfied with the staffing provided by F. Petty Sons on the project. Additionally, Mr. Tassone testified that defendant's workers had failed to clean up their debris from the site in violation of the terms of the subcontract. On July 8, 1986, R.J. Wheeler notified F. Petty Sons, in writing, that it would charge clean-up costs if the problem continued. (Exhibit 4).
The work on the site continued into August but on August 14, 1986 R.J. Wheeler notified F. Petty Sons that it would terminate employment in forty-eight hours due to F. Petty Sons' failure to properly staff the project in violation of the subcontract. On the same day, defendant notified R.J. Wheeler, by mailgram, that it would cease work on the project unless payment was made for the work completed. (Exhibit 12). Subsequently, R.J. Wheeler hired Gansett Steel Erectors ("GSE") to finish the project.
On December 3, 1986 the plaintiff filed a complaint with this court alleging a breach of contract. Plaintiff alleges that defendant did not perform its part of the contract in that it installed the structure in an unskilled and negligent manner and that it did not properly staff the project as required by the contract. Further, plaintiff maintains that it sustained damages as a result of defendant's actions.
In response, defendant filed a counterclaim alleging breach of contract and tortious interference with contract.[2]
Defendant alleges that plaintiff breached its contract in that it interfered with defendant's access to the job site, provided a faulty foundation on which to build, and failed to pay the defendant for completed work. Further, defendant argues that the plaintiff tortiously interfered with a subcontract defendant had with Providence Steel and Iron Company ("PSI") on the same work site. Finally, defendant asserts that it has a mechanic's lien against Vistawall.
There are several issues before the court. Initially, this court must determine whether a valid contract exists between the parties and if so, what are the terms of such a contract. Further, this Court must review the merits of plaintiff's claim and, if it is meritorious, provide an appropriate remedy. Finally, the court must review the defendant's counterclaims.
The defendant argues that the general contract, which contains the requirement that extras be approved in writing, was not properly incorporated into the subcontract, and is, therefore, not part of the agreement of the parties. The defendant attaches great significance to the fact that the general contract was not signed until August 13, 1986, more than three months after the parties entered into the subcontract. Although this contention is appealing, it lacks merit in this case.
Generally, a subcontract may incorporate by a clearly stated general reference all of the terms of the general contract.Chicopee Concrete Service, Inc. v. Hart Engineering,498 N.E.2d 121, 122 (Ma. 1986). Although it is necessary that the matter referred to be in existence it is not necessary that it be in writing. See 17A Am.Jur.2d § 400. In the case at bar, it is clear that Vistawall and R.J. Wheeler had entered into a legally enforceable agreement long before they memorialized it into the August 13, 1986 writing. Mr. Tassone testified that he negotiated with Vistawall to build the warehouse. Subsequently, he engaged several subcontractors, including the defendant, to do work on the site. Further, the work began in May and was substantially completed by August of 1986. These actions indicate that R.J. Wheeler and Vistawall were working under a legally enforceable oral agreement which was eventually memorialized in writing. The fact that they did not memorialize this agreement into written form until August 13, 1986 is of no consequence to this case.
A party who signs a contract generally manifests assent to its terms. F.D. McKendall Lumber Co. v. Kalian, 425 A.2d 515, 518 (R.I. 1981). Mr. Petty's testimony that he did not know that the general contract required extras to be in writing is not only incredible but also immaterial. The general contract is a standard form contract distributed by the Associated General Contractors of America. The terms of said contract clearly require that change orders be obtained in writing before commencing extra work. Accordingly, this court finds that the terms of the general contract were incorporated into the subcontract and became part of the agreement of the parties.
The next issue before the court is whether defendant's failure to provide adequate staffing and failure to perform the work in a workmanlike manner, as alleged by the plaintiff, amounted to a breach of the contract. Similarly, this court must review defendant's counterclaim which alleges that the plaintiff breached the contract by failing to pay the defendant for work completed.
After a careful review of the evidence and the testimony adduced at trial this court is convinced that defendant did not properly staff the project in violation of the express terms of the subcontract. The credible testimony of Mr. Tassone indicated that he repeatedly asked the defendant to supply more workers to the project. In fact, Mr. Petty testified that he provided less workers to the project in early August. Mr. Petty's contention that the reduction in staff was due to plaintiff's failure to pay for completed work is without evidentiary support. Further, there was evidence at trial that defendant's work was done in an unworkmanlike manner in violation of the contract.
Consequently, defendant's counterclaim for breach of contract must fail on its merits. Generally, a contractor cannot recover on a building contract unless it has substantially performed.National Chain Co. v. Campbell, 487 A.2d 132, 135 (R.I. 1985). The credible evidence in the record indicates that the project was approximately sixty percent complete. Mr. Petty testified that the project would have required an additional two weeks to complete. This court finds, based on the evidence presented at trial that the defendant did not substantially perform under the contract and is therefore precluded from recovering for breach of contract.
Next, this court must provide an appropriate remedy for defendant's breach of contract. Plaintiff asks this court for damages in the amount of $12,509.53. Plaintiff asserts that it paid $28,309.53 to have GSE finish the contract and perform remedial services on defendant's work. Additionally, plaintiff alleges that it suffered damages in the amount of $10,000 due to defendant's delay. Finally, plaintiff asks to be reimbursed $3,200 for expenses incurred in removing defendant's debris from the work site.
Generally, the purpose of damages is to place the injured party in the position it would have been in had the contract been performed. George v. George F. Berlander, Inc., 92 R.I. 426, 430, 169 A.2d 370, 372 (1961). Damages must be proven with reasonable certainty and must not be the product of speculation.National Chain Co. v. Campbell, 487 A.2d 132, 135 (R.I. 1985). The burden of proving the amount of damages is on the plaintiff.Id. A plaintiff's actual cost of completion of the contract is prima facie evidence of the amount it is entitled to recover absent evidence from defendant rebutting its reasonableness.Edward R. Marden Corp. v. SR. Const. Co. Inc., 112 R.I. 332, 337, 309 A.2d 675, 677 (1973).
At trial, R.J. Wheeler presented evidence of the damages resulting from defendant's breach. Plaintiff presented competent evidence tending to show that it paid $28,309.53 to GSE to finish the project and perform some remedial work. The defendant failed to rebut the fact that this was a reasonable amount for such work. Plaintiff is entitled to $28,309.53 minus the amount plaintiff saved on the contract due to its breach. Consequently, since plaintiff owed $29,300 on the contract it has suffered no damages due to having GSE finish the project.
Further, plaintiff asserts that it suffered $10,000 in damages due to the two week delay in the construction. This court finds no evidence to support an amount of $10,000 as delay damages. The burden of proving the amount of damages with a reasonable certainty is on the plaintiff. Plaintiff has failed to meet its burden.
Likewise, plaintiff has failed to prove that it paid $3,200 to have the work site cleaned up. This court finds that Mr. Petty's testimony that the debris was from other subcontractors is credible. Plaintiff has failed to prove with reasonable certainty that it suffered $3200 in damages as a result of defendant's workers' failure to remove their debris from the site.
Finally, this court will review the merits of F. Petty 
Sons' counterclaim for tortious interference with contract. F. Petty Sons argues that R.J. Wheeler's August 14, 1986 letter to PSI was written for the purpose of destroying contractual relations between PSI and F. Petty Sons (Exhibit 5).
To recover on a claim of tortious interference with contract a party must show: the existence of a contract; that the alleged wrongdoer had knowledge of the contract; that the interference was intentional; and, that the party suffered damages as a result of such interference. DiBiasio v. Brown Sharpe Mfg. Co.,525 A.2d 489, 493 (R.I. 1987). The parties do not dispute that a contract existed and that R.J. Wheeler knew of the contract. Further, there is evidence that F. Petty Sons expended $300 on materials for the contract and expected to make a ten percent profit on the contract and therefore suffered damages as a result of not performing the contract.
F. Petty Sons has failed to introduce compelling evidence that R.J. Wheeler's actions amounted to tortious interference. To be actionable the interference must be wrongful. C.N.C. ChemicalCorp. v. Pennwalt Corp., 690 F. Supp. 139, 142 (D.R.I. 1988). The provision of truthful information even if not requested generally is not improper. Id. R.J. Wheeler's letter to PSI merely informed PSI of the actions R.J. Wheeler was taking against F. Petty Sons so that it could plan for the remainder of the project. This court finds that F. Petty Sons has failed to prove that R.J. Wheeler intentionally interfered in its contract with PSI.
For the reasons herein above set out, this court finds that there was a valid contract between the parties which incorporated by reference the terms of the general contract including the requirement that extras be approved in writing. Further, this court finds that F. Petty Sons breached such contract by failing to properly staff the project in violation of the contract terms and that R.J. Wheeler suffered damages as a result in that it had to hire GSE to finish the subcontract. This court finds that R.J. Wheeler proved that it had paid GSE $28,309.53 to finish the subcontract but had saved $29,300 on its subcontract with F. Petty Sons. This court finds that the subcontract was between 50 and 60 percent complete at the time of breach. Finally, this Court finds that R.J. Wheeler did not wrongfully interfere with F. Petty Sons' contract with PSI and is not therefore liable for tortious
[1] The pre-fabricated parts are made by Butler Manufacturing Company of Lincoln. Vistawall is a division of Butler. The Butler pre-engineered structure was described by the parties as being similar to an erector set.
[2] It is apparent from the docket sheet that the original answer and counterclaims were not docketed and placed in the file. This court granted defendant's motion to amend its counterclaim and file it accordingly on March 1, 1994.