392 A.2d 365.

STEVEN NAGY *v.* JOHN F. MCBURNEY.

OCTOBER 11, 1978.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris , JJ.

JOSLIN, J.   In 1963 and 1964, John F. McBurney, an attorney and the defendant in this case, instituted five civil collection suits against Steven Nagy, the plaintiff herein. After those suits had finally terminated in his favor, Nagy commenced this action of trespass on the case in the Superior Court in 1965. The common-law rules of pleading then prevailed in this state, and Nagy's declaration contained ten counts of abuse of process and five counts of malicious prosecution, all grounded on McBurney's five collection suits. Nagy alleged that those suits had been instituted maliciously and without probable cause. McBurney pleaded the general issue and eventually the case was tried to a jury. After the evidence was in and both sides had rested, the trial justice granted McBurney's motion for a directed verdict on the malicious prosecution counts, denied both McBurney's and Nagy's motions for directed verdicts on the abuse of process counts, and submitted the case to the jury with instructions to return a separate verdict, with respect to each of the five collection suits, on whether McBurney's employment of legal process constituted an abuse of process. The jury returned a verdict for McBurney as to each suit. Nagy appealed, assigning as errors the granting of McBurney's motions for directed

verdicts on the malicious prosecution counts, the denial of his own motions for directed verdicts on two of the abuse of process counts, and certain evidentiary ruling.

In the early 1960's McBurney represented Nagy in a legal proceeding in which Nagy was defaulted. Thereafter, in April 1962, Nagy complained to the Rhode Island Bar Association that McBurney had permitted the case to be defaulted and had done nothing to defend him. That complaint was ultimately rejected by the committee of this court having jurisdiction over complaints against attorneys.

While that complaint was pending, or shortly after its rejection, McBurney, in a telephone conversation with Nagy, expressed displeasure at Nagy's having instituted the disciplinary proceedings and then allegedly said, "You dirty son-of-a-bitch, you took me before the Bar Association, I'm going to attach your pay anytime I want, for any amount of money that I want because no one can tell me how much money I should charge," and "If you're a man * * * you'd come down the office and I'll kick the hell out of you."

Shortly thereafter, McBurney instituted a collection suit against Nagy and at various times during the next 2 years followed it with four others. Three were to recover for legal services allegedly rendered by McBurney for Nagy, and two were commenced on behalf of a physician for services rendered for Nagy's wife and for a third person. Each suit was commenced by a writ of attachment garnishing Nagy's wages and in three of those suits a total of ten writs of mesne process were issued, each of which also attached Nagy's wages.

In considering the several motions for directed verdicts the trial justice was not permitted to weigh the evidence or to pass on the credibility of the witnesses, but was required to view the evidence and the inferences reasonably deducible therefrom in the light most favorable to the adverse party, and to submit the case to the jury for its resolution if, upon so viewing the evidence, it appeared that there were material

issues upon which reasonable persons might differ. *Evans* v. *Liguori,* 118 R.I. 389, 394, 374 A.2d 774, 776 (1977); *Marshall* v. *Tomaselli,* 118 R.I. 190, 195, 372 A.2d 1280, 1283 (1973); *Powers* v. *Carvalho,* 117 R.I. 519, 524, 368 A.2d 1242, 1246 (1977).

## The Malicious Prosecution Counts

The tort of malicious prosecution, or malicious use of process as it is sometimes called when the original suit giving rise to the action is civil rather than criminal in nature, has long been recognized in this state. It may be defined as a suit for damages resulting from a prior criminal or civil[1] legal proceeding that was instituted maliciously and without probable cause, and that terminated unsuccessfully for the plaintiff therein. *Powers* v. *Carvalho,* 117 R.I. 519, 526, 368 A.2d 1242, 1246 (1977); *Lauzon* v. *Charroux,* 18 R.I. 467, 470, 28 A. 975, 976 (1894).

Each of those basic elements has acquired a gloss from the cases and consequently we briefly amplify our definition. While the element of malice has been variously defined, it is generally held that it may be established by a showing that the person initiating the original action was actuated by a primary motive of ill will or hostility, or did not believe that he would succeed in that action. *Gore* v. *Gorman's Inc.,* 143 F. Supp. 9, 14 (W.D. Mo. 1956); *Albertson* v. *Raboff,* 46 Cal. 2d 375, 383, 295 P.2d 405, 410 (1956); *Willis* v. *Noyes,* 29 Mass. (12 Pick.) 324, 328 (1832); Prosser, *Torts* §120 at 855 (4th ed. 1971). Proof of actual ill will, however, is not a sine qua non, for a hostile motive may also be inferred from a showing of a lack of probable cause, *DeFusco* v. *Brophy,* 112 R.I. 461, 463 n.1, 311 A.2d 286, 287 n.1 (1973); *Quinlan* v.

---

[1]While in most of our cases the prior legal proceeding has been a criminal prosecution, we recognized in *Ring* v. *Ring,* 102 R.I. 112, 114-15, 228 A.2d 582, 584 (1967), that a cause of action for malicious prosecution may be based on an original action which was civil rather than criminal in nature, provided that the prior suit resulted in a special injury to the defendant therein.

*Breslin*, 61 R.I. 327, 331, 200 A. 989, 991 (1938); *Beaumier* v. *Provensal*, 58 R.I. 472, 476, 193 A. 521, 522-23 (1937); Prosser, *supra* at 855, but may not be drawn from the "mere failure" of the original action. *DeSimone* v. *Parillo*, 87 R.I. 95, 98-99, 139 A.2d 81, 83 (1958).

Proof of malice alone, however, even in the extreme, will not suffice to establish a case of malicious prosecution unless accompanied by a showing that the original action was instituted without probable cause. Probable cause is defined as "the existence of a state of facts sufficient to cause an ordinarily careful and prudent person to believe the accused guilty." *Quinlan* v. *Breslin*, 61 R.I. at 330, 200 A. at 991 (1938). That definition, to be sure, is taken from a case where the original action was criminal in nature, and the term may carry a somewhat different connotation where the action was civil, rather than criminal. In general terms, however, as Dean Prosser explains, a person has probable cause for bringing a civil suit if he reasonably believes that he has a good chance of establishing it to the satisfaction of the court or the jury. Prosser, *supra* at 854. The Second Restatement's more specific definition is also helpful:

> "§675. Existence of Probable Cause
>
>> One who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either
>>
>> (a) correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or
>>
>> (b) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information." Restatement (Second) of Torts §675 (1977).

Moreover, this definition is subject to the qualification that a judicial determination by a court of original jurisdiction in favor of the person who initiated the civil proceedings is generally held to be conclusive evidence of probable cause, even though that determination is ultimately reversed on appeal, unless it is shown to have been obtained by fraud or other imposition upon the court. *Hull* v. *Sprague*, 23 R.I. 188, 188-89, 49 A. 697, 697 (1901); *Giusti* v. *Del Papa*, 19 R.I. 338, 339-40, 33 A. 525, 525-26 (1896); *Welch* v. *Boston & Providence Railroad*, 14 R.I. 609, 610 (1884); Prosser, *supra* at 855; Restatement (Second) of Torts §675, comments b, i (1977). The rationale for drawing the inference of conclusiveness appears to be that a competent tribunal is not likely to render a decision for a party who lacked probable cause for initiating the action.

Finally, a plaintiff, in order to maintain an action for malicious prosecution, must show that the original proceeding against him finally terminated in his favor. An exception to this requirement of a favorable final termination that is applicable in this as well as in a majority of other courts in that a termination based on a compromise or settlement is not deemed favorable. *Moreau* v. *Picard*, 54 R.I. 93, 95, 169 A. 920, 921 (1934); Prosser, *supra* at 853-54.

Whether the trial justice erred in directing verdicts for McBurney on the five malicious prosecution counts depends, then, on whether the evidence viewed in the required light, *supra* at p.3, raised factual issues as to the existence of the essential elements upon which reasonable persons might differ.

Whether the jury could have found malice, that is, that McBurney was actuated by ill will or hostility in commencing the original actions, poses no problem. Nagy testified that following his complaint to the bar association, McBurney called him a "dirty son-of-a-bitch" and threatened to attach his pay for any amount of money. That testimony, notwithstanding McBurney's denial that he bore Nagy any malice, when considered together with the almost immediate com-

mencement of one collection suit, the subsequent initiation of four others, the issuance of multiple writs of mesne process, and other evidence which, being cumulative, need not be recited, created a basis for a reasonable inference that each suit was maliciously instituted.

Neither need we dwell at length on the requirement that the original actions must finally have terminated in Nagy's favor. Three of the five suits were decided in Nagy's favor by the District Court where they originated and were not appealed. The other two, although decided at the District Court level for McBurney, were subsequently dismissed in the Superior Court because of McBurney's failure to file further bills of particulars ordered by the court. Those dismissals were, in effect, equivalent to a dismissal because of failure to prosecute, and that kind of termination is deemed favorable for purposes of establishing eligibility to maintain an action for malicious prosecution. *See Johnson* v. *Byrd,* 279 Ala. 491, 494, 187 So. 2d 246, 249 (1966); *Burt* v. *Place,* 4 Wend. 591, 597-98 (N.Y. Sup. Ct. 1830); Restatement (Second) of Torts §674, comment j (1977). *Contra, Quecedo* v. *DeVries,* 22 Md. App. 58, 70, 321 A.2d 785, 791 (1974).

Whether the record contains sufficient evidence so that the jury could have found that McBurney lacked probable cause for instituting the five actions against Nagy presents a more difficult question. In the first and second legal services collection suits, judgments were entered for McBurney in the District Court after trials at which Nagy did not appeal to defend himself because his then attorney did not tell him to be present. A literal application of the prior determination qualification of the probable cause requirement would bar the malicious prosecution counts arising from those suits.

Whether judgments entered in those suits under those circumstances should be deemed conclusive evidence of probable cause, although a question of first impression in this court, was not argued by the parties and for that reason we will not decide that question at this time. The two judgments,

although reversed on appeal, were not shown to have been obtained by unfair means. Under the existing rule, those judgments are deemed conclusive evidence that McBurney had probable cause for commencing those proceedings. It was, therefore, not error for the trial justice to direct verdicts for McBurney on the malicious prosecution counts that arose from those two suits.

Each of the remaining three cases instituted by McBurney was terminated favorably to Nagy in the court in which it originated, and the question of probable cause in each of them reduces to whether Nagy presented sufficient evidence to raise issues upon which reasonable persons might draw conflicting conclusions regarding not "the actual state of the case, in point of fact, but * * * the honest and reasonable belief of the party prosecuting." *Goldstein* v. *Foulkes,* 19 R.I. 291, 291, 36 A. 9, 9 (1895).

The third and fourth collection suits filed by McBurney sought fees allegedly owed by Nagy to Dr. Harry Kechijian for treatment of Nagy's wife, Eleanor, and of a third person, Joan Viens. Both women had been treated by Dr. Kechijian for injuries sustained in an automobile collision, and were represented by McBurney in the negligence cases which grew out of that collision. Testimony was given that, in the settlement negotiations of those cases, as well as others arising out of the same collision, McBurney submitted the bills for Dr. Kechijian's medical services. Further testimony disclosed that McBurney received in final settlement an amount substantially exceeding the sum of the amount retained by him for his legal fees plus those disbursed by him to his clients. There was also testimony that McBurney had said, when he disbursed the net settlement proceeds to his clients, that all medical bills would be paid.

On the basis of this testimony the jury could reasonably have concluded that the settlement check received by McBurney included an amount for payment of the medical bills and that McBurney failed either to pay those bills or to

transmit the money to his clients. That view of the evidence clearly raises a disputable question as to whether McBurney had probable cause to initiate the third and fourth collection suits. To direct a verdict on each of those counts, therefore, was error.

McBurney's fifth suit was instituted during the pendency of the first two legal services collection suits. He sought $300 for legal services allegedly rendered in defending Nagy in the case which gave rise to the latter's complaint to the bar association, settling two New York City misdemeanor charges against him, and representing him in another automobile collision case. The evidence as to the claimed services in connection with each of these matters and as to whether in fact they were rendered is sufficiently in conflict so that reasonable persons might reach conflicting conclusions regarding the existence of probable cause for commencing the suit. The motion for a directed verdict on this count should, therefore, have been denied.

### The Abuse of Process Claims

The action of abuse of process provides a remedy for a claim arising when a legal procedure, although set in motion in proper form, has been perverted to accomplish an ulterior or wrongful purpose for which it was not designed. *Powers* v. *Carvalho*, 117 R.I. at 527 n.3, 368 A.2d at 1247 n.3 (1977); *Manufacturers Supply Co.* v. *Parker*, 103 R.I. 426, 427, 238 A.2d 616, 617 (1968); *Goldstein* v. *Rhode Island Hospital Trust National Bank*, 110 R.I. 580, 587, 296 A.2d 112, 116 (1972); *Lauzon* v. *Charroux*, 18 R.I. 467, 470-71, 28 A. 975, 976 (1894); *see* Prosser, *supra* at 856. Abuse of process differs from malicious process in that the gist of the former is not in commencing an action or causing process to issue without justification, but in misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish. *Id.*

In the first and second legal services collection cases McBurney fixed the ad damnum of $100 and commenced

each action with a writ attaching Nagy's wages in the amount of the ad damnum. In each case the garnishee withheld from Nagy the full amount of the ad damnum plus a sum for costs and filed an affidavit with the court indicating that the attachment had caught the full amount sought. Notwithstanding, McBurney then issued a writ of mesne process in each case seeking an additional attachment of $100 and each writ caught additional funds.

Nagy contends that the writs of mesne process, although proper in form, were perverted to harass him and to accomplish an ulterior purpose for which they were not designed and that therefore constituted an abuse of process as a matter of law, entitling him to directed verdicts on the abuse of process claims based on those suits.

However, McBurney testified that he bore Nagy no malice; that when the writs of mesne process were issued he was not aware that the writs of attachment had caught any funds; that he did not receive copies of the garnishee's affidavits filed by Nagy's employer; and that he had not inquired of that employer as to whether his original writs had caught any funds. In addition, he refused to testify whether he had checked the court records prior to issuing the writs of mesnes process. It cannot be gainsaid that McBurney's issuance of the writs of mesne process without either checking the court records or inquiring from Nagy's employer whether the original attachments had achieved their purpose, when considered together with the other evidence in the case, would reasonably yield to the inference that in prosecuting these cases McBurney was motivated by spite and was utilizing the additional process for a wrongful purpose.

Yet the inference that McBurney was perverting a legal process to accomplish a wrongful purpose was not the only conclusion to which the evidence was reasonably susceptible. Nagy points to no statute or decision mandating an inquiry at the courthouse or the office of a garnishee as a precondition to issuing a writ of mesne process. Consequently, the jury could reasonably infer that McBurney, being unaware of

what had been garnisheed by the original writs, issued the writs of mesne process for the legitimate purpose of ensuring satisfaction of any judgments he might later obtain in the event he prevailed in the litigation. So long as the latter hypothesis was reasonable, and the jury could find that the writs were not used for an improper purpose, the trial court properly refused to direct a verdict for Nagy on these counts.

Admission of the evidence which Nagy claims was erroneously excluded would in nowise bear on the conclusions we have already reached and consequently there is no need to consider these assignments of error.

The plaintiff's appeal is in part sustained and in part denied, the judgment appealed from is in part affirmed and in part reversed, and the case is remanded to the Superior Court for further proceedings.

Mr. Justice Paolino participated in the decision but retired prior to its announcement.

*Tillinghast, Collins & Graham, Edwin H. Hastings, Christopher H. Little,* for plaintiff.

*Joseph Gendron, John L. Drury,* for defendant.