**C.N.C. CHEMICAL CORPORATION, Plaintiff,**

v.

**PENNWALT CORPORATION, Defendant.**

**Civ. A. No. 86–0736T.**

United States District Court, D. Rhode Island.

Aug. 10, 1988.

Jeffrey P. Finan, Law Offices of John J. Finan, Jr., Pawtucket, R.I., for plaintiff.

William P. Robinson III, Edwards & Angell, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

TORRES, District Judge.

This case is before the Court on cross objections to a Magistrate's Report and Recommendation. Specifically, Plaintiff takes issue with the recommendation that Defendant's motion to dismiss counts I and II of the complaint be granted and Defendant contests the recommendation that its motion to dismiss count III be denied.

## FACTS

According to the complaint, C.N.C. Chemical Corporation ("CNC") and Pennwalt Corporation ("Pennwalt") both manufacture defoaming compositions. In November of 1984, Pennwalt commenced a civil suit in the United States District Court for the Eastern District of Pennsylvania alleging that the defoaming composition made and/or sold by CNC infringed one of Pennwalt's patents. That suit was brought against intermediaries through whom CNC's defoamer was sold to the Glatfelter Company ("Glatfelter"). CNC was not named as a defendant in that action but alleges that it "was forced to defendant [sic]," presumably, to protect its business interests. CNC's complaint further states that, in October of 1985, Pennwalt filed a notice dismissing its suit without prejudice. CNC's counsel represents that the disposition was not the product of any settlement agreement.

Counts I and II of the instant complaint sound in malicious prosecution. They are based on allegations that the Pennsylvania suit was instituted maliciously and without probable cause and that it required CNC to incur attorneys' fees and other costs of defense. Count III seeks recovery for tortious interference with contractual relations between CNC and Glatfelter. It alleges that Pennwalt "discussed the existence of suit in an attempt to prevent Glatfelter Company from purchasing any further defoamer from C.N.C. Chemical...." Defendant has moved to dismiss all three counts pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that they fail to state a claim upon which relief may be granted.

## DISCUSSION

### Standard of Review

An objection to a Magistrate's recommendation with respect to a Rule 12(b)(6) motion to dismiss requires a *de novo* determination by the Court. 28 U.S.C. § 636(b)(1). A Rule 12(b)(6) motion should not be granted "... unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In making that determination, the complaint should be construed in the light most favorable to the Plaintiff. *E.g., Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed. 2d 90 (1974). Every doubt should be resolved to the Plaintiff's advantage, *Klimas v. International Tel. & Tel. Corp.*, 297 F.Supp. 937, 938 (D.R.I.1969), and all well-pleaded allegations of the complaint should

be accepted as true. *E.g., Miree v. Dekalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

*The Malicious Prosecution Claims*

Under Rhode Island law,[1] a claim for malicious prosecution based on a prior civil suit requires proof that the prior suit:

1. was instituted maliciously and without probable cause;

2. terminated unsuccessfully for the Plaintiff therein or in favor of the claimant; and

3. resulted in some special injury to the claimant.

*Salvadore v. Major Elec. & Supply, Inc.*, 469 A.2d 353, 357 (R.I.1983); *Nagy v. McBurney*, 120 R.I. 925, 929, 392 A.2d 365, 367 (1978); *Ring v. Ring*, 102 R.I. 112, 114–15, 228 A.2d 582, 584 (1967).

■ Implicit among the elements constituting this cause of action is that the previous proceeding must have been brought against the party claiming malicious prosecution. Thus the cases clearly contemplate that:

"... a plaintiff, in order to maintain an action for malicious prosecution, must show that the original proceeding *against him* finally terminated in his favor."

*Nagy*, 120 R.I. at 931, 392 A.2d at 368 [emphasis added].

In the instant case, Pennwalt contends that this requirement has not been satisfied because CNC was never a party to the Pennsylvania action. CNC on the other hand, argues that, because it had a proprietary interest in and controlled the defense of the Pennsylvania suit, it would have been bound by any judgment as if it were a party. *See Ransburg v. Automatic Finishing Systems, Inc.*, 412 F.Supp. 1357, 1363 (E.D.Pa.1976); *Restatement (Second) of Judgments* § 39 (1982). Therefore it concludes that it is entitled to pursue its claim for malicious prosecution.

CNC's argument, in effect, seeks to compare apples and oranges. The elements of the tort of malicious prosecution are well defined and bear no relationship to the doctrines of res judicata and collateral estoppel. One of those elements is that the prior suit must have been brought *against* the claimant. The fact that a claimant who was not a party to the prior suit might be bound by a judgment rendered therein is insufficient to satisfy that requirement. Thus, for example, while a judgment against one suing for property damage may be binding against his insurer, as subrogee, it clearly would not subject the insurer to liability for malicious prosecution if the suit was wrongfully instituted.

■ Even if CNC could be viewed as a party against which the Pennsylvania action was brought, its complaint demonstrates that such action did not terminate in a way that would support a claim for malicious prosecution. The cases alternately define the manner in which the prior suit must be terminated as "unsuccessfully for the plaintiff therein" or "in his [the claimant's] favor." *E.g., Nagy*, 120 R.I. at 929 and 931, 392 A.2d at 367 and 368. These differing formulations raise a question as to whether the claimant must have prevailed or whether the failure of the defendant (*i.e.*, the plaintiff in the prior suit) to achieve a definitive victory is sufficient. The courts' application of this requirement indicates that an inconclusive result that cannot be characterized as either a victory or a defeat is insufficient. Hence, a termination based on a compromise or settlement will not support a claim for malicious prosecution. *Nagy*, 120 R.I. at 931, 392 A.2d at 368.

Applying those principles to this case, it appears that Pennwalt's voluntary dismissal of the Pennsylvania action, without prejudice, was not a termination that was either favorable to CNC or "unsuccessful" for Pennwalt. Under Fed.R.Civ.P. 41(a)(1), Pennwalt is free to bring that action again. Therefore, the parties are left in the same position as if it had never been brought. *See Cabrera v. Municipality of Bayamon*, 622 F.2d 4, 6 (1st Cir.1980).

---

1. Neither party objected to the Magistrate's application of Rhode Island law and both have cited Rhode Island law in their arguments and memoranda. *See* 28 U.S.C. § 636(b)(1).

CNC relies on *Moreau v. Picard,* 54 R.I. 93, 169 A. 920 (1934), where it was stated that the dismissal of a *criminal* prosecution "either voluntarily or by reason of a failure to prosecute, *followed by the discharge of [the] accused,* is in general a sufficient termination thereof to support the action of malicious prosecution." 54 R.I. at 95, 169 A. at 921 [emphasis added]. However, *Moreau* is inapposite to this case because, there, the accused, having won a dismissal and been discharged, could not be prosecuted again. Accordingly, the result clearly was favorable to the claimant and unfavorable to the party initiating the prior action.

In any event, whether or not the dismissal of the Pennsylvania suit is characterized as "unsuccessful" for Pennwalt, it does not constitute a "termination" upon which a claim of malicious prosecution may be based. The termination requirement is rooted in considerations of ripeness and judicial economy. It is based on the belief that a malicious prosecution claim should not be litigated when the suit underlying it might still be resolved by settlement or might result in a verdict for the Plaintiff, thereby negating the contention that it was brought without probable cause. Accordingly, a "termination" that permits the matter to be revived cannot serve as a foundation for the action. *See* W. Keeton, D. Dobbs, R. Keeton, and D. Owen, *Prosser and Keeton on Torts* § 119, at 874 (5th ed. 1984). This is particularly true in cases, such as this one, where applicable procedural rules narrowly limit a plaintiff's ability to revive a claim that he has voluntarily dismissed. Thus, Fed.R.Civ.P. Rule 41(a) prevents a plaintiff from, unilaterally, dismissing his complaint without prejudice once a responsive pleading has been filed and precludes him from reinstituting the suit more than once. Such provisions afford ample protection against the possibility that a party might be harassed by a succession of suits based on the same claim.[2]

In short, it is apparent from the face of the complaint that the suit complained of was not brought *against* CNC. It is equally apparent that such suit was neither resolved *in favor of* CNC or *unsuccessfully* for Pennwalt nor was it *terminated* in a manner that would support a claim for malicious prosecution.

*Tortious Interference Claim*

A claim for tortious interference with contractual relations requires proof of:

1. the existence of a contract;

2. defendant's knowledge of the contract;

3. intentional interference by the defendant; and

4. damages resulting from the interference.

*DiBiasio v. Brown & Sharpe Mfg. Co.,* 525 A.2d 489, 493 (R.I.1987); *Smith Dev. Corp. v. Bilow Enter. Inc.,* 112 R.I. 203, 211, 308 A.2d 477, 482 (1973).

In order to be actionable, the interference must be improper. *Federal Auto Body Works v. Aetna Casualty & Surety Co.,* 447 A.2d 377, 379–80 (R.I.1982). Whether interference is improper in a particular situation depends upon the circumstances and requires balancing a number of factors including the actor's motive, the nature of his conduct, the interests he seeks to advance and the interests with which he interferes. *Restatement (Second) of Torts* § 767 (1979).

■ The general rule is that providing truthful information does not constitute improper interference even though the information was not requested. *Id.* at § 772. That rule is the basis upon which Pennwalt

---

2. For this reason, CNC's reliance on *Kennedy v. Byrum,* 201 Cal.App.2d 474, 20 Cal.Rptr. 98 (Cal. Ct.App.1962) is misplaced. In that case it was held that a voluntary dismissal without prejudice was a sufficient termination to support a claim for malicious prosecution. However, there, the court's holding was based on California procedural rules that permitted a plaintiff who dismissed his action without prejudice to reinstitute that action as many times as he wished. *See Cal. Civil Procedure Code* § 581 (West 1988). Therefore, the court concluded that unless such a dismissal was deemed to constitute a termination sufficient to support a malicious prosecution claim, a plaintiff could subject a defendant to perpetual harassment without ever being called to account.

moves to dismiss count III. Pennwalt contends that, since the complaint alleges only that Pennwalt "discussed the existence of suit" with Glatfelter; and, since the suit did, in fact, exist, its actions cannot be deemed "improper".

While that argument has some surface appeal, the Court finds it unpersuasive for two reasons. First, it is based on an overly restrictive reading of CNC's allegations that is inconsistent with both the context of the complaint and the principle that, in passing on a Rule 12(b)(6) motion, the court should construe the complaint liberally in favor of the Plaintiff. Thus, Pennwalt urges the Court to interpret the allegation that it "discussed the existence of suit" with Glatfelter as inferring that it did nothing more than state that a suit had been filed. Such a construction is at variance with the usual definition of "discuss" which is "... to investigate (as a question) by reasoning or argument [or to] argue by presenting the various sides of...." *Webster's Third International New Dictionary* (Unabridged) 648 (1986). Pennwalt's interpretation also ignores the allegations in count III that such discussion was part of Pennwalt's "attempt to prevent Glatfelter Company from purchasing any further defoamer from C.N.C. Chemical". Considered in that context, it seems far more reasonable to construe the complaint as charging Pennwalt with doing more than blandly reciting the bare fact that a suit existed.

Even if the complaint could be fairly read as alleging no more than a statement by Pennwalt that a suit was pending; and, perhaps, a factual recitation of the contents of that suit, dismissal would still be inappropriate at this juncture. The general rule that communicating truthful information does not constitute "improper" interference should not be viewed as absolute. Its applicability depends upon the circumstances. Thus, one who reports on a suit solely for the purpose of interfering with contractual relations and knowing that its allegations are false should no more be immunized from liability for his statements than one who accurately, but maliciously, repeats defamatory words uttered by another knowing them to be false. *See, e.g., Martin v. Wilson Pub. Co.*, 497 A.2d 322, 327 (R.I.1985).[3]

Furthermore, even if providing Glatfelter with truthful information about the suit was not "improper" interference, the initiation of that suit would be if, as CNC alleges, it was instituted without probable cause and for the purpose of interfering with CNC's contractual relations. Thus, comment c to Restatement § 767 recognizes that wrongfully initiated litigation may constitute "improper" interference with contractual relations and states:

> The use of these weapons of inducement is ordinarily wrongful if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication. (See §§ 674–681B). A typical example of this situation is the case in which the actor threatens the other's prospective customers with suit for the infringement of his patent and either does not believe in the merit of his claim or is determined not to risk an unfavorable judgment and to rely for protection upon the force of his threats and harassment.

*Restatement (Second) of Torts* § 767 comment c, at 31.

In short, reading count III of the instant complaint in the light most favorable to the Plaintiff, the Court concludes that it does allege "improper" interference with CNC's contractual relations and sufficiently states a claim upon which relief may be granted.

Accordingly, for all of the foregoing reasons, the Magistrate's recommendation that the motion to dismiss counts I and II of the complaint be granted and that the

**3.** Pennwalt relies on *Vieira v. Meredith*, 84 R.I. 299, 301, 123 A.2d 743, 744 (1956) for the proposition that statements which might otherwise be defamatory are absolutely privileged when made *during the course of a judicial proceeding*. That reliance is misplaced since, here, the "discussions" with Glatfelter occurred *outside* the context of the prior suit.

144

motion to dismiss count III be denied is approved. Counts I and II are hereby dismissed and the motion to dismiss count III is hereby denied.

IT IS SO ORDERED.