Raymond DeLEO et ux.

v.

ANTHONY A. NUNES, INC., et al.

No. 86–516–Appeal.

Supreme Court of Rhode Island.

Aug. 24, 1988.

Gerard M. DeCelles, Providence, for plaintiff.

Sean O. Coffey, Licht & Semonoff, William R. Grimm, Gerald John Petros, Hinckley, Allen, Snyder & Comen, Providence, for defendant.

## OPINION

KELLEHER, Justice.

In the spring of 1979 Anthony Nunes, Inc., purchased a two-and-one-half-acre parcel of waterfront property situated on the southerly side of Hope Street in the town of Bristol, in an area known as Walker's Cove. A portion of the parcel is made up of filled-in land. Early in 1980 it was decided to subdivide and develop the parcel into five lots upon which single-family residences would be built. Since the parcel abuts Narragansett Bay, Nunes was required to seek approval for his project from the Coastal Resource Management Council and the Army Corps of Engineers. The Bristol Planning Board was also involved in the approval of the subdivision. Nunes's parcel is across the street from the residence of Raymond DeLeo and his wife, Anna. Upon hearing what was happening in the neighborhood, Raymond DeLeo made it quite clear that he was opposed to the project and expressed his opposition before a variety of government agencies. Since Mrs. DeLeo's participation in this litigation and in the events preceding it was minimal, we shall refer only to her husband, and by his last name.

In September 1981 DeLeo filed a complaint in the Superior Court, alleging ownership of the parcel adjoining the Nunes parcel and asking the court to determine the extent of his "riparian, littoral and flat rights" in the Nunes parcel. DeLeo also asked that Nunes be permanently enjoined from assigning or in any way alienating his "rights" in the two-and-one-half-acre parcel. Subsequently Nunes responded to DeLeo's suit with a series of counterclaims.

On September 11, 1981, Nunes sold one of the five lots to Sally Appleton (Appleton). DeLeo later amended his complaint to include Appleton. Shortly after the Appleton sale, DeLeo filed a notice of lis pendens in the Bristol land records against Nunes's property. Later DeLeo filed a notice of lis pendens against the Appleton lot. These filings cast a cloud on the parcel's title. Nunes experienced difficulty in selling the remaining four lots and construction plans for the Appleton lot were put on hold.

Time marched on and in September 1982 Nunes obtained the necessary approvals that would permit the construction of the Appleton residence. In order to sell the remaining four lots Nunes asked the Superior Court to expedite the consideration of DeLeo's claim. Subsequently on October 22, 1982, a Superior Court justice ruled that DeLeo had no interest in the entire parcel and that a grant by the state and federal governments in 1933 to the parcel's previous owner had extinguished any and all public rights in the parcel. This trial justice also declared that the two lis pendens filed against the parcel were null and void. Later in December 1982 an order was entered dismissing DeLeo's complaint.

DeLeo attempted to appeal the December 1982 dismissal of his complaint to this court. In January 1983 the Superior Court, acting pursuant to Rule 11(f) of the Supreme Court Rules, dismissed his appeal without prejudice on the grounds of prematurity since the rights and liabilities of all the litigants had not been adjudicated. In this appeal Nunes correctly points out that DeLeo has failed to take any of the appellate procedural steps necessary to preserve an appellate review of DeLeo's claim of an interest in the Nunes parcel. The record clearly indicates that at no time after the dismissal of his premature appeal did DeLeo ever file a claim of appeal from the December 1982 dismissal of his complaint. His present claim of appeal is specifically directed at the counterclaim phase of this dispute and what transpired when the counterclaims were considered in October 1985. Consequently, the merits of the 1982 adjudication will not be considered by this court. The 1982 unappealed order of dismissal also estops DeLeo from attempting to invoke the so-called public trust doctrine

as a defense to the slander-of-title counterclaims filed by Nunes and Appleton. *Cole v. Charron*, 477 A.2d 959, 961 (R.I.1984).

Nunes and Appleton responded to DeLeo's complaint with a series of counterclaims in which they each sought damages for slander of title, abuse of process, and a malicious use of process. The trial on the counterclaims occurred in October 1985. After directing the verdicts in favor of DeLeo on both Nunes's and Appleton's claims for abuse of process and malicious use of process, the trial justice sent the case to the jury on the slander-of-title claim. The jury awarded Nunes $104,114 in compensatory damages and $75,000 in punitive damages. Subsequently the trial justice granted DeLeo's motion for a new trial unless Nunes filed a remittitur of all compensatory damages that were in excess of $89,421 and a remittitur of all punitive damages that were in excess of $30,000. The jury awarded Appleton $3,000 in compensatory damages and $7,000 in punitive damages. The trial justice did not disturb this award. DeLeo is before us on appeal relative to the slander-of-title litigation. Nunes and Appleton have appealed the dismissal of their claims for damages on their abuse-of-process and malicious-use-of-process claims. Nunes also faults the trial justice's reduction of the damage award awarded him by the jury. Both counterclaimants complain about the trial justice's refusal to award a prejudgment interest on the punitive-damage awards.

Shortly before the turn of the century our predecessors in *Hopkins v. Drowne*, 21 R.I. 20, 23, 41 A. 567 (1898), recognized the common-law action of slander of title. The court emphasized that damages could be recovered in an action for slander of title upon a showing that the defendant maliciously uttered false statements about the plaintiff's ownership of real estate which resulted in the plaintiff sustaining an actual pecuniary loss. DeLeo's counsel claims that the trial justice erred in finding that DeLeo's conduct was maliciously motivated and he also complains that the trial justice erred in certain portions of his charge. We disagree.

The court in *Hopkins* emphasized that in using the term malice it was not using the term in its "worst sense," but described malice as an intent to deceive or injure and emphasized that in order to establish malice, the record must present evidence of the making of a false statement that is made with full knowledge of its falsity, and for the specific purpose of injuring the plaintiff. The trial justice in his charge quoted extensively from the *Hopkins* case and stressed the necessity of proof that DeLeo knew his statements were false at the time they were made. The trial justice also emphasized that an erroneous statement, in and of itself, does not justify recovery. The jury was also told that a good-faith mistake would not warrant an award of damages. Throughout the charge the trial justice emphasized that in order to find malice, the jury was required to find that DeLeo knew of the falsity of his statements as to the title and made the statements with an intent to injure Nunes and Appleton. Notwithstanding DeLeo's claims to the contrary, we believe the trial justice clearly set forth the pertinent issues which were to be resolved by the jury as it considered the respective monetary claims arising out of the slander-of-title actions.

Again, we do not believe that the trial justice erred in denying DeLeo's motion for a new trial. In urging that there be a new trial, DeLeo asserts that there was no competent evidence that any false statements he might have made were made with malice. We disagree. The record is replete with evidence which would sustain a finding of malice. Nunes and DeLeo are building contractors who, through the years, have competed against each other. At no time prior to Nunes's involvement with the Walker's Cove parcel had DeLeo ever claimed an interest in that particular real estate. Once he learned of Nunes's intentions DeLeo physically interfered with construction of the parcel, called police to the development, complained to the press, objected to every step of the development process, and in fact specifically claimed that he had an interest in the triangular

portion of the Nunes parcel. His harassment actions continued even after his complaint had been dismissed by the Superior Court in December 1982.

Early in this dispute DeLeo, after his efforts had proved unsuccessful, told Nunes that this encounter would be the first of fifty battles, if necessary, to continue to oppose Nunes's enterprise. The trial justice noted that this attitude epitomized the whole character of DeLeo's determination to do whatever had to be done by "fair" or "foul means" to thwart the Walker's Cove transformation. We endorse the sentiments expressed by the trial justice.

We now turn to the appeals of Nunes and Appleton.

Nunes and Appleton contend that DeLeo's filing of the lis pendens against their lots constitutes both an abuse of process and malicious use of process. In *Nagy v. McBurney*, 120 R.I. 925, 392 A.2d 365 (1978), we stated that in order for a plaintiff to sustain an action for abuse of process, he or she must demonstrate that (1) the defendant instituted proceedings or process against the plaintiff and (2) the defendant used these proceedings to obtain an ulterior or wrongful purpose for which the proceedings were not designed.

The tort of malicious prosecution, or malicious use of process as it is sometimes called, was also discussed by this court in *Nagy*. The court stated that "[i]t may be defined as a suit for damages resulting from a prior criminal or civil legal proceeding that was instituted maliciously and without probable cause * * *." *Nagy*, 120 R.I. at 929, 392 A.2d at 367.

Abuse of process differs from malicious prosecution or malicious use of process in that the gist of the tort is not in commencing an action or causing process to issue without justification but in misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish.

■ Here Nunes and Appleton contend, and we agree, that DeLeo did institute process against them by filing the lis pendens against their respective properties.

*See Grasso v. Byrd*, 417 A.2d 911 (R.I. 1980). However, they argue that DeLeo did not file process to preserve the right to assert a property interest; rather, he filed process as part of a comprehensive, malicious effort to derail the parcel's development, which action constitutes an abuse of process. They also claim that there was sufficient evidence of DeLeo's malice in this regard.

We agree. In reviewing a directed verdict, this court views the evidence in a light most favorable to the plaintiff to determine whether any competent, credible evidence supports the plaintiff's claims. If so, the direction constitutes error. *Achille v. Colonial Penn Insurance Co.*, 505 A.2d 1173 (R.I.1986). We believe that the trial justice did err in directing verdicts for DeLeo when there was competent, credible evidence that would support both the claim of an abuse of process and the claim of a malicious use of process.

When the term malice is used within the context of a claim for malicious prosecution or a malicious use of process there is no necessity of proving ill will but there must be a showing that the defendant's actions were primarily motivated by ill will or hostility. *Nagy*, 120 R.I. at 929, 392 A.2d at 367.

There is ample evidence that DeLeo's continuous and lengthy efforts to block the development of Nunes's five-lot parcel was motivated by the ill will and hostility he has for his competitor Nunes. Earlier in this opinion we alluded to several incidents which manifest these sentiments. There are other episodes which give further proof of this fact. DeLeo, in his communications to third parties, described Nunes as "crafty" and "brazen," and he accused his fellow contractor of somehow engaging in a "conspiracy" to circumvent the applicable regulations. As a contractor himself DeLeo knows or should have known that the filing of a lis pendens can become a pernicious practice that has the same effect as attaching one's property without the benefit of a court hearing. A real estate expert testified that any property "encumbered" by a lis pendens is "unmarketable" because

the property would never be sold so long as the lis pendens remained in effect. Filing such a document without a colorable claim is done at the filer's peril. These actions on DeLeo's part, while directed mainly towards Nunes, also had a direct impact on the Appleton lot. Consequently we believe that the jury should have been allowed to consider Nunes's and Appleton's claims.[1]

▮▮▮▮ The remaining issues relate to the trial justice's reduction of the jury's punitive-damage award to Nunes and his rejection of Nunes's and Appleton's request that prejudgment interest be added to the punitive-damage awards. The trial justice, in reducing the $75,000 punitive-damage award to $30,000, described the jury's award as "grossly excessive." He pointed out that the award was approximately 10 percent of DeLeo's net worth and also observed that such an amount was not needed to deter DeLeo or others from conducting themselves similarly in the future. A trial justice may set aside the amount of an award of punitive damages awarded by a jury only if the amount clearly appears to be excessive or to represent the passion and prejudice of the jury rather than their unbiased judgment. *Mazzaroppi v. Tocco,* 533 A.2d 203 (R.I.1987). On this record we cannot fault the trial justice's reduction.

▮▮▮ In denying Nunes and Appleton any prejudgment interest on their punitive-damage awards, the trial justice was responding to a post trial motion made by DeLeo. Nunes and Appleton concede that this court in *Murphy v. United Steelworkers of America,* 507 A.2d 1342 (R.I.1986), ruled that the prejudgment-interest statute, G.L. 1956 (1985 Reenactment) § 9–21–10, does not apply to punitive damages. However, Nunes and Appleton contend that neither this court nor the trial court addressed the issue of whether interest should accrue on

a punitive-damage award during an appeal to this court.

In *Greater Providence Deposit Corp. v. Jenison,* 485 A.2d 1242, 1244 (R.I.1984), we emphasized that punitive damages are awarded to punish the defendant rather than compensate the plaintiff. While there may be some merit in Nunes's and Appleton's contentions that failure to award such an interest in such circumstances benefits the wrongdoers, this complaint should be directed to the Legislature because the language in § 9–21–10 speaks of an award of interest on pecuniary awards but fails to mention punitive awards. In *Murphy* we believed that this omission was significant. Consequently, we cannot fault the trial justice's disposition of the damages awarded to Nunes and Appleton.

Accordingly DeLeo's appeal as it relates to the slander-of-title claim is denied and dismissed. Nunes's cross-appeal on the grant of a remittitur of a portion of the punitive-damage award is also denied. Nunes's and Appleton's cross-appeals on their claims for prejudgment interest are also dismissed. However, Nunes's and Appleton's claims for abuse of process and malicious use of process are sustained and the case is remanded to the Superior Court for further proceedings. Upon remand Nunes will be afforded a ten-day period within which he can comply with the remittitur mandate. If there is no compliance, a new trial will be held limited to the issue of damages Nunes sustained because of DeLeo's slander of Nunes's title.

---

1. In recognizing that Nunes and Appleton can prosecute their claims for an abuse of process and a malicious use of process, it should be noted that on remand they assume the burden of showing that the damages they seek were not

any part of the awards approved by the trial justice.