John **BROUGH** et al.

v.

Linda **FOLEY** et al.

No. 88–496–A.

Supreme Court of Rhode Island.

April 4, 1990.

Katherine Merolla, Amedo C. Merolla, Adolph N. Anderson, Jr., Asquith, Merolla, Anderson, Archetto & Kane, Providence, for plaintiffs.

James Marusak, Gidley, Lovegreen & Sarli, Judith C. Savage, Edwards & Angell, Providence, for defendants.

## OPINION

FAY, Chief Justice.

This matter comes before the Supreme Court for a second time after having been remanded to the Superior Court in *Brough v. Foley*, 525 A.2d 919 (R.I.1987). Before us today is the appeal of the defendant, Linda Foley, from a Superior Court order dismissing her counterclaim of abuse of process and granting the plaintiffs' motion for summary judgment in regard to her counterclaims of slander of title and malicious use of process. The facts relevant to this appeal are as follows.

On February 17, 1971, Jeanette S. Nathans, now deceased, conveyed a certain parcel of real estate located on Watch Hill Road in the town of Westerly to Watch Hill Manor, Inc. (Watch Hill Manor), a Rhode Island corporation. On the same day, as a part of the consideration for this conveyance, Nathans executed an option or right

of first refusal in favor of Eldacare, Inc. (Eldacare), the parent corporation of Watch Hill Manor. This option gave Eldacare first-refusal rights on a parcel of real estate (option property) owned by Nathans, which was adjacent to the parcel that had been conveyed to Watch Hill Manor.

Thereafter, Watch Hill Manor developed a nursing home on its property and operated the same until the real estate was sold to defendant Foley in 1983.

Following the death of Nathans, her executor, Harold B. Soloveitzik, Esq. (Soloveitzik), listed the option property with Raymond Castagna (Castagna), a real estate broker and Westerly town councilman. Soon thereafter Castagna and plaintiffs formed a partnership and negotiated with Soloveitzik to purchase the option property. The negotiations culminated with the signing of a purchase-and-sale agreement by both parties on July 22, 1985. The agreement provided for sale of the property to the partnership for the sum of $475,000 but was made subject to the right of first refusal held by Eldacare.

On July 25, 1985, Soloveitzik forwarded notice of the sale agreement and the purchase price to Eldacare. On or about July 29, 1985, Eldacare informed Soloveitzik that defendant Foley had been appointed as its nominee for the purpose of exercising the option.[1] On or about August 9, 1985, defendant Foley exercised her right of first refusal to purchase the disputed property and so informed Soloveitzik by a written instrument. Soloveitzik notified the partnership of the exercise of the right of first refusal and proceeded to enter into a purchase-and-sale agreement with defendant Foley. This agreement ultimately led to the conveyance of the disputed property to defendant Foley on September 3, 1985.

On February 5, 1986, after obtaining a State "certificate of need," defendant Foley filed a zoning-amendment petition with the Westerly Town Council seeking to rezone the newly purchased property in order to expand the adjacent nursing home. On March 10, 1986, the day scheduled for the hearing on the petition, plaintiffs filed a complaint in Superior Court alleging that defendant Foley did not own the subject property because the right of first refusal granted to Eldacare was void as violative of the rule against perpetuities.[2] In their request for relief plaintiffs asked for a temporary restraining order and were granted the same. Pursuant to their complaint plaintiffs also filed a notice of lis pendens.

On that same day plaintiffs filed with the Westerly town clerk a written protest to the zoning-amendment petition of defendant Foley. The protest stated:

"Litigation has commenced in the Washington County Superior Court in the State of Rhode Island to have title to the property which is the subject of the proposed Zoning Amendment and/or Petition for Zoning Amendment conveyed to John Brough, Jordon Russo, Sr., Jordon Russo, Jr. and Nicholas M. Castagna. The complaint alleges that, as we do now, with this protest and/or objection that no valid title is held by Linda Foley."

On April 29, 1986, defendant Foley filed an answer to plaintiffs' complaint, alleging that plaintiffs lacked standing to sue and that their claim to title was "interposed merely for purposes of delay and harassment." Hence she counterclaimed against plaintiffs, alleging abuse of process, malicious prosecution, and slander of title.[3]

---

1. An assignment instrument was executed on July 29, 1985, in favor of defendant Foley and was subsequently recorded in the Land Evidence Records of the Town of Westerly.

2. Prior to the filing of the complaint, Raymond Castagna assigned his rights as vendee in and to the sale agreement to plaintiffs, the other members of the partnership.

3. Subsequent to the filing of plaintiffs' complaint but prior to the filing of defendant Foley's

answer, defendant Foley moved for a dissolution or modification of the restraining order and for a discontinuance of the injunctive relief accorded therein. An order was entered by the Superior Court in March 1986, allowing defendant Foley to proceed with her zoning-amendment petition. The petition came before the town council for hearing on April 14, 1986, and again on May 12, 1986. The transcript of the hearing indicates that the council had serious concerns over the interests claimed by plaintiffs

Soon thereafter both parties moved for partial summary judgment on the issue of the validity of the option as exercised by defendant Foley. In granting summary judgment in favor of defendant Foley, the trial justice found that the option did not violate the rule against perpetuities and that the assignment of the option from Eldacare to defendant Foley was valid. The plaintiffs subsequently appealed the judgment to this court, whereupon we determined that plaintiffs lacked standing to sue in the first instance and thereby affirmed the grant of summary judgment.[4] *Brough v. Foley*, 525 A.2d 919 (R.I.1987). The case was then remanded to the Superior Court for a resolution of defendant Foley's counterclaims.

At this time plaintiffs moved for summary judgment on the malicious prosecution and slander-of-title counterclaims and moved to dismiss the abuse-of-process counterclaim on the ground that it failed to state a claim upon which relief could be granted. All three motions were heard in the Superior Court on April 29, 1988, and were granted by orders of the court on May 9, 1988. It is from the grant of these motions that defendant Foley appeals. We shall address each counterclaim separately.

 The tort of malicious prosecution or malicious use of process, as it is sometimes called when the original suit giving rise to the action is civil rather than criminal in nature, may be defined as a suit for damages resulting from a prior criminal or civil legal proceeding that was instituted maliciously and without probable cause and that terminated unsuccessfully for the plaintiff therein. *Powers v. Carvalho*, 117 R.I. 519, 526, 368 A.2d 1242, 1246 (1977). Such actions are traditionally disfavored because of the belief that they tend to deter the prosecution of crimes and/or to chill free access to the courts. *Id.* at 526, 368 A.2d at 1247; *Paul v. National Education Ass'n*, 189 N.J. Super. 265, 267, 459 A.2d 1213, 1214 (1983). Consequently such actions are subjected to a stricter burden of

proof by requiring the plaintiff to establish the existence of malice and want of probable cause by "clear proof." *Solitro v. Moffatt*, 523 A.2d 858, 862 (R.I.1987); *Fox v. Smith*, 26 R.I. 1, 5, 57 A. 932, 934 (1904).

 It is generally held that malice may be established by a showing that the person initiating the original action was primarily motivated by ill will or hostility or did not believe that he or she would succeed in that action. *Nagy v. McBurney*, 120 R.I. 925, 929, 392 A.2d 365, 367 (1978). "Proof of malice alone, however, even in the extreme, will not suffice to establish a case of malicious prosecution unless accompanied by a showing that the original action was instituted without probable cause." *Id.* at 930, 392 A.2d at 367. For want of such a showing in this case, we believe that the grant of summary judgment on the malicious-prosecution claim was appropriate.

In determining probable cause, the Second Restatement of Torts provides:

"One who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either

(a) correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or

(b) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information." Restatement (Second) *Torts* § 675 (1977).

We believe that the record supports a finding of probable cause under this definition.

The gravamen of plaintiffs' complaint was that the right of first refusal contained in the purchase-and-sale agreement was void because it violated the rule against perpetuities and that, therefore, plaintiffs were entitled to purchase the disputed

---

and was troubled over granting the petition to defendant Foley in the event that she did not own the property. The petition was ultimately denied on May 12, 1986.

**4.** Because we determined that plaintiffs lacked standing, it was not necessary for us to pass upon the correctness of the trial justice's determination.

property. The plaintiffs' belief that they had standing to present this claim was based upon the well-established legal principle that an executory purchase-and-sale agreement vests in the vendee thereof equitable title to the land involved. *George v. Oakhurst Realty, Inc.*, 414 A.2d 471 (R.I. 1980).

Although we reached a decision adverse to plaintiffs on the issue of standing in *Brough v. Foley*, 525 A.2d 919 (R.I.1987), we cannot say that the belief that they had standing was groundless. Furthermore, plaintiffs' rule-against-perpetuities claim raised an issue that had not been previously addressed by this court. In reaching our decision in *Brough*, we declined to pass on the merits of this claim. Since the law remains unsettled, we cannot say plaintiffs' belief in the validity of this claim was unreasonable. Thus we believe that a finding of probable cause was unavoidable. Accordingly since reasonable minds could not differ on the question of probable cause, there did not exist a genuine issue as to any material fact concerning the malicious-prosecution counterclaim, and a grant of summary judgment was proper.

■ We now turn to the propriety of the grant of summary judgment with respect to the slander-of-title counterclaim of defendant Foley. In *DeLeo v. Anthony A. Nunes, Inc.*, 546 A.2d 1344 (R.I.1988), this court discussed the standards for proving slander of title. We noted:

"Shortly before the turn of the century our predecessors in *Hopkins v. Drowne*, 21 R.I. 20, 23, 41 A. 567 (1898), recognized the common-law action of slander of title. The court emphasized that damages could be recovered in an action for slander of title upon a showing that the defendant maliciously uttered false statements about the plaintiff's ownership of real estate which resulted in the plaintiff sustaining an actual pecuniary loss.

"The court in *Hopkins* emphasized that in using the term malice it was not using the term in its 'worst sense,' but described malice as an intent to deceive or injure and emphasized that in order to establish malice, the record must present

evidence of the making of a false statement that is made with full knowledge of its falsity, and for the specific purpose of injuring the plaintiff." *Id.* at 1346.

Our determination that plaintiffs had probable cause to bring their action in Superior Court necessitates the finding that such action did not amount to the "making of a false statement that is made with full knowledge of its falsity." *Id.* Therefore, the filing of the complaint did not constitute a slander of title. Furthermore since the filing of the lis pendens and the request for a temporary restraining order were incident to the filing of the complaint, neither of these actions can be considered a slander of title.

■ Nonetheless defendant Foley asserts that the objection to the zoning amendment petition was, of itself, slanderous. We have previously held that a zoning board should decline to hear an application for an exception or variation until it is made clear that the applicant has an unquestionable legal right in the property. *Baril v. Zoning Bd. of Review of Woonsocket*, 97 R.I. 212, 196 A.2d 834 (1964). Thus plaintiffs had the right to file an objection before the town council not only because they claimed an interest in the property themselves but also for the sole reason that there existed a cloud on the title of defendant Foley of which the town council should have been made aware. Accordingly the protest could not be considered to be a false statement made with full knowledge of its falsity because it was based on a lawsuit that was instituted with probable cause. Therefore summary judgment was proper on the slander-of-title counterclaim, because there did not exist a genuine issue as to any material fact.

■ Finally we turn to the abuse-of-process counterclaim. In *Nagy v. McBurney*, we stated that an action for abuse of process arises when a legal procedure, although set in motion in proper form, has been perverted to accomplish an ulterior or wrongful purpose for which it was not designed. We noted that abuse of process differs from malicious prosecution or malicious use of process in that the essence of

the tort is not in commencing an action or causing process to issue without justification but in misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish. 120 R.I. at 934, 392 A.2d at 370.

Defendant Foley argues that the trial justice wrongfully dismissed her abuse-of-process counterclaim. For purposes of our review we note that a motion to dismiss for failure to state a claim upon which relief can be granted should only be allowed if it is clear beyond a reasonable doubt that the claimant will be unable to prove his right to relief. In passing on the motion to dismiss, the trial justice is obliged to construe the complaint in the light most favorable to the complainant, with all doubts resolved in his favor and allegations accepted as true. No complaint will be deemed insufficient unless it is clear beyond a reasonable doubt that the complainant will be unable to establish his right to relief under any set of facts which might be proved in support of his claim. *Bragg v. Warwick Shoppers World, Inc.*, 102 R.I. 8, 12, 227 A.2d 582, 584 (1967). We believe that the trial justice incorrectly applied this standard in dismissing the abuse-of-process counterclaim because we are unable to say that this claim could not be proven under any set of facts. It is therefore necessary for us to remand this case to the Superior Court for further proceedings on the abuse-of-process claim.

For the foregoing reasons the defendant's appeal is sustained in part and denied in part, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.